IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

v.

CHADWICK KEITH BRANNON,

Defendant.

CRIMINAL ACTION FILE
NO. 4:09-CR-38-RLV-WEJ

## **REPORT AND RECOMMENDATION**

The Government seeks restitution against defendant, Chadwick Keith Brannon, on behalf of Victim Vicky ("Vicky"), one of the individuals identified in a series of images containing child pornography that defendant possessed. At defendant's sentencing [73], the Honorable Robert L. Vining, Jr., Senior United States District Judge, referred this issue to the undersigned for a Report and Recommendation.    For the reasons explained below, the undersigned **RECOMMENDS** that the District Court order Mr. Brannon to pay restitution to Vicky in the amount of $3,500.

## I.    **BACKGROUND**

On November 10, 2009, a federal grand jury sitting in the Northern District of Georgia returned a two-count indictment [1] against defendant. Count one of the indictment charged defendant with knowingly receiving child pornography, as defined in 18 U.S.C. § 2256(8), that had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1). Count two of the indictment charged defendant with knowingly possessing child pornography, as defined in 18 U.S.C. § 2256(8), that had been mailed, shipped, and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).

Defendant proceeded to a jury trial before Judge Vining on July 19-22, 2010 [56, 58-60]. On July 22, 2010, the jury found defendant not guilty of the charge contained in count one, but guilty of the charge contained in count two [61]. On October 28, 2010, Judge Vining sentenced defendant to seventy-two months of imprisonment, followed by twenty years of supervised release [73]. (See also J&C [74], dated October 28, 2010.) At sentencing, the Government requested restitution on behalf of a known child victim (pseudonym "Vicky").

2

Under 18 U.S.C. § 3664(d)(5), a court must determine a claimant's losses and impose restitution within ninety days of a defendant's original sentencing. Here, the ninety-day restitution period expired on January 26, 2011. The undersigned sought to hold a restitution hearing immediately after receipt of notice of the referral, but could not do so because the Bureau of Prisons had unexpectedly taken the defendant into its custody and transported him to a facility in Virginia. The Court initially set the hearing for January 18, 2011 (a date within ninety days of sentencing), which it believed would give the Marshals Service time to return Mr. Brannon to the district. However, when it became apparent that Mr. Brannon would not be back in the district by that date, the Court held a telephonic hearing with counsel on January 14, 2011 [84], to discuss scheduling and a pending motion. The Government asserted that the ninety-day rule could be waived. Defense counsel agreed to waive the deadline, but also suggested that the Court could begin the hearing in Mr. Brannon's absence on January 18, 201, which was within the ninety-day period, continue the hearing, and then resume it once Mr. Brannon returned to the district even if that date were outside the ninety-day limit. (Id. (oral recording).)

The Court elected to follow that suggested procedure. Thus, the hearing began on January 18, 2011 [85], but was continued due to the defendant's absence.

3

Conflicts in counsels' schedules and trial calendars resulted in more delay. In the interim, in reliance on Dolan v. United States, 130 S. Ct. 2533, 2539 (2010), the undersigned ruled that, even without waiver, the fact that a sentencing court misses the statute's ninety-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution. (See Order of Mar. 18, 2011 [94] at 1.)[1] The Court eventually received evidence at a hearing held on March 30, 2011 [98], which has been transcribed [100] (hereafter "Tr.").

During that hearing, both counsel for the Government and counsel for defendant presented their arguments concerning restitution.[2] The parties also submitted briefs. In its Memorandum, the Government argues that the defendant's possession of images of Vicky harmed her, but does not suggest a proposed

---

[1] See also United States v. Monzel, No. 09-cr-243 (GK), 2010 WL 4261429, at *4-5 (D.D.C. Oct. 22, 2010) ("Dolan thus clearly held that the time limitations in § 3664(d)(5) do not deprive district courts of the power to order restitution.").

[2] At the conclusion of the hearing, the Court directed the Government to submit information responsive to its Order [94] of March 18, 2011, which had granted defendant's request for information about other restitution awards the Government had obtained on behalf of Vicky. (Tr. 59.) The Court also directed the Government to contact Vicky's counsel, Carol Hepburn, Esq., to obtain certain documents responsive to this Court's Order [83] of January 14, 2011. (Tr. 60-61.) Specifically, the Court determined that Mr. Brannon was entitled to know all restitution orders that Ms. Hepburn had obtained on behalf of Vicky. (Id.) Apparently, attempts to contact Ms. Hepburn have been unsuccessful.

4

restitution award. (See Mem. of the U.S. in Supp. of a Victim's Req. for Rest. [101].) Mr. Brannon asserts that the issue of restitution is moot because it was not imposed within ninety days of his original sentencing date (despite any waiver by his counsel); that even if the issue is not moot, the Government has failed to show that Vicky's harm was proximately caused by his possession of her image; and, if the Court finds proximate cause, then the amount of restitution awarded should be between $100 and $250. (See Def.'s Post-Hr'g Br. [103].)

## II.    **DISCUSSION**

### A.    **General Standards Governing Restitution**

Under the Mandatory Restitution for Sex Crimes portion of the Violence Against Women Act of 1994, 18 U.S.C. § 2259, the Court must order restitution for child pornography offenses. 18 U.S.C. § 2259(a). The Court must order this restitution, "[n]otwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law." Id. Section 2259(b) provides:

(1)    **Directions.**–The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).

5

(2) **Enforcement**.–An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.

(3) **Definition**–For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for–

   (A) medical services relating to physical, psychiatric, or psychological care;

   (B) physical and occupational therapy or rehabilitation;

   (C) necessary transportation, temporary housing, and child care expenses;

   (D) lost income;

   (E) attorneys' fees, as well as other costs incurred;

   (F) any other losses suffered by the victim as a proximate result of the offense.

(4) **Order mandatory**–

   (A) The issuance of a restitution order under this section is mandatory.

   (B) A court may not decline to issue an order under this section because of–

      (i) the economic circumstances of the defendant; or

> (ii)    the fact that a victim has, or is entitled to, receive
>         compensation for his or her injuries from the
>         proceeds of insurance or any other source.

18 U.S.C. § 2259(b). The statute defines a victim as "the individual harmed as a

result of the commission of a crime under this chapter." Id. § 2559(c).

If a victim satisfies the requirements of § 2259, restitution is mandatory, and

the Court cannot refuse to order restitution because of a defendant's economic

circumstances or because a victim may receive compensation from other sources.

18 U.S.C. § 2259(b)(4). Orders of restitution under § 2259 are to be issued, and

enforced, in accordance with 18 U.S.C. § 3664 and 18 U.S.C. § 3663A. Id. §

2259(b)(2). The Government bears the burden of proving the amount of the victim's

losses by a preponderance of the evidence, and the court must resolve any disputes

as to the proper amount or type of restitution, using the same preponderance of the

evidence standard. 18 U.S.C. § 3664(e).

## B.    Whether Vicky Is a Victim Under § 2259

The Court first must determine whether Vicky qualifies as a "victim" for

purposes of § 2259, which defines a "victim" as "the individual harmed as a result

of a commission" of such a violation. 18 U.S.C. § 2259(c). Here, the jury convicted

defendant of knowingly possessing child pornography, which is a violation of 18

U.S.C. § 2252A(a)(5)(B) and 2256(8)(A). Vicky thus is a victim, for purposes of

§ 2259(c), if she suffered harm from defendant's possession of child pornography

containing her image.

The United States Supreme Court has observed that:

The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.

New York v. Ferber, 458 U.S. 747, 759 (1982) (footnote omitted). The Supreme

Court also has noted:

Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

Id. at 759 n.10 (internal quotation marks and citation omitted). As one court has

observed, "Although Ferber dealt with sales and advertising, and not receipt, of

child pornography, the 'circulation' and 'distribution system' that the Court

contemplated must surely include an end consumer who receives the child

8

pornography; 'circulation' and 'distribution' do not occur in a vacuum." United

States v. Van Brackle, No. 2:08-CR-042-WCO, 2009 WL 4928050, at *2 (N.D. Ga.

Dec. 17, 2009).

Moreover, the United States Court of Appeals for the Fifth Circuit has

recognized that the end consumer of child pornography directly harms the child

portrayed in that pornography. United States v. Norris, 159 F.3d 926, 929-31 (5th

Cir. 1998). Indeed, the Fifth Circuit observed:

> Unfortunately, the "victimization" of the children involved does not
> end when the pornographer's camera is put away. The consumer, or
> end recipient, of pornographic materials may be considered to be
> causing the children depicted in those materials to suffer as a result of
> his actions in at least three ways.
>
> First, the simple fact that the images have been disseminated
> perpetuates the abuse initiated by the producer of the materials. "[T]he
> materials produced are a permanent record of the children's
> participation and the harm to the child is exacerbated by their
> circulation." The consumer who "merely" or "passively" receives or
> possesses child pornography directly contributes to this continuing
> victimization.
>
> Second, the mere existence of child pornography represents an
> invasion of the privacy of the child depicted. Both the Supreme Court
> and Congress have explicitly acknowledged that the child victims of
> child pornography are directly harmed by this despicable intrusion on
> the lives of the young and the innocent. The recipient of child
> pornography obviously perpetuates the existence of the images

9

received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.

Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. As Congress put it in explicit factual findings:

> [T]he existence of and traffic in child pornographic images . . .
>
> . . . inflames the desires of child molesters, pedophiles, and child pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials[.]

Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing . . . between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

Any of these effects, stemming directly from a consumer's receipt of or willingness to receive child pornography, would amply justify the conclusion that a child depicted in the pornographic images was a "victim" of that crime.

159 F.3d at 929-30 (citations omitted; emphasis in original).

10

The Honorable Harold L. Murphy, United States District Judge, found the reasoning of the Ferber and Norris cases persuasive, and concluded that children who are portrayed in child pornography suffer harm "as a result of" the possession of that pornography. See United States v. McDaniel, No 4:08-cr-26-HLM (N.D. Ga. Hr'g of Dec. 22, 2009), aff'd, 631 F.3d 1204 (11th Cir. 2011). Judge Murphy therefore concluded that children depicted in child pornography are "victims" of a defendant's knowing possession of child pornography, within the meaning of § 2259(c). Id. The undersigned concurs with that conclusion here.

The evidence at trial demonstrated that Vicky was one of the children whose images were depicted in the child pornography materials that defendant possessed. In a letter submitted to the U.S. Probation Office, Vicky wrote as follows:

I am the identified subject in what is known as the "Vicky" series of images. I am writing to you to let you know that for each one of the defendants you see, the fact that he has downloaded the images of what has happened to me hurts me very much.

I now suffer from flashbacks and panic attacks. I have trouble sleeping. I can't be in a group or crowd of people for more than 40 minutes or so at a time before feeling like I have to leave. Because of this I have had to leave college as I could not participate in my classes because of my panic attacks. I have this overwhelming undefined fear that sweeps over me. This is for the biggest part because of the men who are now downloading the pictures and videos of me. My father, who did the abuse, is now locked up and I have some peace in knowing

11

that he can never hurt me again or hurt anyone else. I don't know that about any of these other men. For each of them, it is true that I don't know him; I don't even know what he looks like. And it may seem strange, but the not knowing is a big part of what causes me such problems. What is so frightening is that I could have walked past him any day on the street and not know that he would have had [sic] seen me being raped as a little girl, and enjoyed my pain and humiliation. Any one of them could be around me and I would not even know it.

(Victim Statements [102] at 2.)

Similarly, in her victim impact statement, Vicky wrote that she is living

everyday with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Every day people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.

(Victim Statements at 1.)[3]

The Government adduced evidence at the hearing from Dr. Randall Green, a

clinical psychologist who evaluated Vicky, as well as three reports from Dr. Green.

(Tr. 3-53; see also Gov't Exs. 2-4.) Dr. Green's testimony and reports demonstrate

---

[3] Vicky's Mother and Step-father provided similar victim impact statements to the Probation Office. (See Victim Statements at 5-9.)

that Vicky suffers continuing, cognizable harm each time an individual views an

image depicting her abuse.

Given the above evidence, the Court finds that the Government has

established, by a preponderance of the evidence, that Vicky is an individual harmed

as a result of defendant's commission of a crime under Chapter 110–that is,

defendant's knowing possession of child pornography. The Court therefore finds

that Vicky is a "victim" for purposes of § 2259. This finding is buttressed by the

Eleventh Circuit's decision in McDaniel, which provides as follows:

> Like the producers and distributors of child pornography, the
> possessors of child pornography victimize the children depicted within.
> The end users of child pornography enable and support the continued
> production of child pornography. They provide the economic incentive
> for the creation and distribution of the pornography, and the end users
> violate the child's privacy by possessing their image. All of these
> harms stem directly from an individual's possession of child abuse
> images. Thus the district court did not err in finding that Vicky was a
> victim of McDaniel's possession of child pornography, and
> consequently, that she is eligible for restitution under section 2259.

McDaniel, 631 F.3d at 1208.

## C. Causation Under § 2259

In affirming Judge Murphy's Order in McDaniel, the Eleventh Circuit held

that § 2259 "limits recoverable losses to those proximately caused by the

13

defendant's conduct." McDaniel, 631 F.3d at 1208. The undersigned concludes that the Government has demonstrated, by a preponderance of the evidence, that defendant's possession of the images depicting Vicky proximately caused harm to her. Although the Court recognizes that Vicky's father initially harmed her by engaging in the conduct depicted in the images and by creating the images, "his culpability does not insulate [defendant] from shouldering the responsibility for his own separate injurious conduct." United States v. Hicks, No. 1:09-cr-150, 2009 WL 4110260, at *4 (E.D. Va. Nov. 24, 2009). The evidence shows that Vicky suffered harm as a result of defendant's possession of the child pornography depicting her image. See McDaniel, 631 F.3d at 1209 ("Vicky suffers 'each time an individual views an image depicting her abuse'"). Indeed, as Vicky noted in a letter to the Court:

> The fact that the defendant you are sentencing has seen the pictures of me makes a difference. I believe you have the Victim Impact Statement that I wrote previously. All of the things that I stated there are true about each one of them. . . . The fact that each one is out there and has seen me and watched me being raped makes me sicker, makes me feel less safe, makes me feel more ashamed and more humiliated.

14

(Victim Statements at 2-3.) Indeed, Vicky and Dr. Green have attested, first-hand, to the ongoing trauma that Vicky suffers every time the child pornography containing her image is traded and viewed. (Id.; Tr. 3-53; Gov't Exs. 2-4.)

Given that evidence, the Court concludes that, when defendant possessed the child pornography containing Vicky's image, "his actions presented a sufficiently proximate tie to her ongoing injuries to justify an award of restitution under § 2259." Hicks, 2009 WL 4110260, at *4. The Court therefore finds that the Government has shown, by a preponderance of the evidence, that defendant's knowing possession of the child pornography proximately caused Vicky's harm. See McDaniel, 631 F.3d at 1209 (based on approximately the same record, "the district court did not clearly err in finding that McDaniel's possession proximately caused Vicky's losses").

## D.   Amount of Restitution

Section 2259(b)(1) directs the Court to command defendant to pay the full amount of the victim's losses, as determined by the Court under § 2259(b)(2). 18 U.S.C. § 2259(b)(1). Section 2259(b)(2), in turn, requires the Court to award restitution in accordance with 18 U.S.C § 3664, which sets forth general procedures for ordering restitution. Id. § 2259(b)(2). Section 2259(b)(3) sets forth categories

15

of injury for which a defendant must pay restitution. Id. § 2259(b)(3). Those

categories include reimbursement for medical services relating to psychological or

psychiatric care incurred by the victim. Id. Other courts have awarded costs of

future counseling expenses. Hicks, 2009 WL 4110260, at *5 (collecting cases).

Finally, § 2259(b)(3) also allows recovery of attorneys' fees incurred by the victim.

18 U.S.C. § 2259(b)(3).[4]

The Court is aware that defendant possesses limited financial resources.

Section 2259, however, specifically prohibits the Court from considering

defendant's economic circumstances when calculating a restitution award under that

statute, and the Court also cannot refuse to award restitution because the victim may

receive compensation from insurance or any other source. Hicks, 2009 WL

4110260, at *5.

The Court, however, may apportion liability if it finds that more than one

defendant has contributed to the victim's loss. Hicks, 2009 WL 4110260, at *5.

---

[4] Although Vicky's attorney, Ms. Hepburn, apparently made submissions to
the U.S. Probation Office in an effort to obtain restitution for her client, Ms.
Hepburn neither responded to this Court's Order [83] directing her to answer certain
document requests from defendant nor submitted any documentation supporting a
fee request. (Tr. 56-57.) Therefore, the Court has no basis upon which to
recommend any attorney's fees for Ms. Hepburn.

Here, the Government has adduced evidence indicating that Vicky has incurred, or will incur, the following losses: (1) $250.00 for a psychological evaluation; and (2) $108,975 in future counseling expenses.[5] These sums total $109,225.00. (See Gov't Ex. 4; Tr. 27-28.)

The Court concludes that the testimony and report of Vicky's psychologist (Dr. Green), coupled with the impact statements from Vicky, her mother, and her stepfather, demonstrate by at least a preponderance of the evidence that defendant caused Vicky real and identifiable injuries that now require clinical therapy to redress, and that will continue to require such therapy in the future. The Court further finds that Dr. Green's estimate of $ 108,975 in future counseling expenses for Vicky is sufficiently accurate and reasonable to justify an award of those expenses under § 2259, and that the itemized bill submitted, along with Dr. Green's

---

[5]The $108,975 figure in Government Exhibit 4 for future counseling expenses from May 2010 has been revised down from higher amounts in earlier evaluations. For example, in his initial report from April 2009 (Gov't Ex. 2), Dr. Green opined that Vicky would need future counseling expenses of $128,005 (plus medication costs). However, when Dr. Green evaluated Vicky again in November 2009 (Gov't Ex. 3), his estimate soared to $193,025, given what he described in his testimony as Vicky's worsened state of mental health. (Tr. 27-28.) Dr. Green added that his current estimate (Gov't Ex. 4) is accurate given Vicky's current improved mental health, but that this estimate could be conservative if her condition worsens. However, he made this estimate based on a reasonable degree of psychological certainty. (Id. at 25-29, 31, 34.)

report, accurately reflect the cost of Dr. Green's fee for his interview of Vicky and the preparation of his report. The Court therefore finds that it has a sufficient basis to make a "reasonable estimate" of the amount that reflects Vicky's full loss, due to defendant's acts.[6]

The undersigned, however, still must determine "whether and how the Court must apportion liability among those already convicted of similar offenses against Vicky, or those yet to be prosecuted." Hicks, 2009 WL 4110260, at *6. As shown below, one court addressing the issue of restitution has awarded the full amount of Vicki's damages, while others have looked to § 3664(h) as a basis for apportioning liability. Hicks, 2009 WL 4110260, at *6.

To date, the undersigned's research has located eighteen court orders directing end users of child pornography depicting Vicky's image to pay her restitution in the amount of $267,136.10.[7] See United States v. Scott, No. 10-4155, 2011 WL 322833, at *1 (10th Cir. Feb. 3, 2011) (affirming restitution award of

---

[6] The Court received, but has not relied upon, a report from Smith Economics Group, Ltd. (Gov't Ex. 6), and a list of explicit chats related to Vicky (Gov't Ex. 7).

[7] Because restitution amounts are paid directly to the clerk's office of the sentencing district (Tr. 60), the Government represents that it does not know how much of that sum has been collected. Given that many of these defendants are in prison, it is likely that Vicky has collected little of this money.

$219,546.10); McDaniel, 631 F.3d at 1209 (affirming restitution award of $12,740);

United States v. Baxter, 394 F. App'x 377, 379 (9th Cir. 2010) (affirming restitution

award of $3,000); United States v. Morris, No. 3:09-CR-101-D (01), 2011 WL

766551 (N.D. Tex. Feb. 23, 2011) (accepting negotiated restitution of $100); United

States v. Walsh, 5:09-cr-00027 (W.D. Va. Mar. 16, 2010) (awarding restitution of

$1,250);[8] United States v. Aguirre, No. 1:08-cr-434-AWI, 2010 WL 1328819, at *5

(E.D. Cal. Apr. 2, 2010) (awarding restitution of $3,000); United States v.

Bartlebaugh, No. 1:09-CR-251, 2010 WL 411324, at *1 (N.D. Ohio Jan. 28, 2010)

(awarding restitution of $1,000); United States v. Brunner, No. 5:08cr16, 2010 WL

148433, at *4 (W.D.N.C. Jan. 12, 2010) (awarding restitution of $1,500); United

States v. Scheidt, No. 1:07-CR-00293 AWI, 2010 WL 144837, at *5 (E.D. Cal. Jan.

11, 2010) (awarding restitution of $3,000); Hicks, 2009 WL 4110260, at *6

(awarding restitution of $3,000); United States v. Hyson, No. 09-CR-00305 (E.D.

Va. Nov. 13, 2009) (awarding restitution of $5,000); United States v. Woodin, No.

09-CR-044 (E.D. Cal. Aug. 21, 2009) (awarding restitution of $1,000);[9] United

---

[8] Walsh is apparently not reported, but is discussed in United States v. Church, 701 F. Supp. 2d 814, 818 (W.D. Va. 2010).

[9] Hyson and Woodin are apparently not reported, but are discussed in Hicks, 2009 WL 4110260, at *6 n.8.

States v. Ferenci, No. 1:08-CR-0414 AWI, 2009 WL 2579102, at *5 (E.D. Cal. Aug. 19, 2009) (awarding restitution of $3,000); United States v. Renga, No. 1:08-CR-0270 AWI, 2009 WL 2579103 at *6 (E.D. Cal. Aug. 19, 2009) (awarding restitution of $3,000); United States v. Zane, No. 1:08-CR-0369 AWI, 2009 WL 2567832 at *5 (E.D. Cal. Aug. 18, 2009) (awarding restitution of $3,000); United States v. Monk, No. 1:08-CR-0365 AWI, 2009 WL 2567831 at *5 (E.D. Cal. Aug. 18, 2009) (awarding restitution of $3,000)[10]; United States v. Ochoa, No. 08-CR-000261-001 (E.D. Cal. July 23, 2009) (awarding restitution of $250.00); United States v. Lynn, No. 08-CR-000262-001 (E.D. Cal. July 23,2009) (awarding restitution of $750.00).[11]

Of these eighteen cases, one case, Scott, made the largest restitution award by far (i.e., $219,546.10). Indeed, given the range of awards in the other seventeen cases (i.e., $100 to $12,740), Scott is an outlier. If one totals the other awards (i.e.,

_____

[10] Six of the reported decisions listed here were authored by the Honorable Anthony W. Ishii, Chief United States District Judge for the Eastern District of California. Because he has sentenced a number of persons for possession of child pornography, Judge Ishii has apparently selected $3,000 as the amount of damage each of these perpetrators has proximately caused to Vicky.

[11] Ochoa and Lynn are apparently not reported, but are discussed in Hicks, 2009 WL 4110260, at *6 n.8.

$47,590) and divides that total by seventeen, the average award in reported cases is

$2,799.41.

In response to this Court's request (see supra note 2), the Government

submitted a Notice of Prior Restitution Awards [99]. Although the Government

cannot represent that the list is exhaustive, the Notice reflects that the total amount

of restitution awarded by federal courts to victim Vicky as of April 13, 2011, is

$1,247,563. (Some of the cases listed in the Notice are among the eighteen cases

discovered in the undersigned's research.) The amounts awarded on that Notice

range from $250.00 to $305,219.85, with the average being $12,231. However,

most of the awards range from $1,000 to $5,000. If the Court removes four outliers

that greatly skew the average (i.e., Fluitt ($147,000); Trantham ($219,546);

Hoffman, ($152,252); and Burgess ($305,219)), the total awarded drops to

$423,546, and the average awarded per case drops to $4,321.[12]

The Court is aware that several other cases involving the series of images

containing images of Vicky presently remain pending in other jurisdictions.

---

[12] If one combines the average awarded in the reported cases after Scott is excluded ($2,799) with the average awarded in the Government's Notice after removal of the four outliers ($4,321), the total is $7,120, with the average awarded between these two information sources totaling $3,560.

21

See Hicks, 2009 WL 4110260, at *6 (observing that numerous other cases involving those images were pending before district judges in the Eastern District of Virginia and other jurisdictions); see also Monzel, 2010 WL 4261429, at *11 (finding defendant's possession of child pornography proximately harmed Vicky and setting hearing on damages for future date). The Court further concludes that "coordination of any potential future awards to avoid unjustly enriching Vicky is unworkable," and agrees that "there is no mechanism of which the Court is aware–in the U.S. Probation Service or otherwise–which is capable of managing such a scenario." Hicks, 2009 WL 4110260, at *6.

The Vicky series is among the most popular among perverted purveyors of child pornography. Recent statistics show that there may be 9,200 cases in this country associated which about 44,000 Vicky images. (Tr. 15.)[13] Morever, the number of cases will surely increase given that, unfortunately, these images will never leave the internet. (Id. at 50.)

---

[13] The defendant reports that, in response to his counsel's subpoena, NCMEC's Technical Assistance located 10,168 reports where images from the Vicky series were submitted for review by law enforcement agencies. (Def.'s Post-Hr'g Br. 20.)

Given the number of defendants prosecuted to date, the dollar value of the restitution awards, the average award from reported cases when Scott is excluded ($2,799), the average award from the Government's Notice when the top four awards are excluded ($4,321), and the high degree of likelihood that many more defendants "will be successfully prosecuted for unlawfully possessing or receiving" the series of child pornography containing Vicky's image and will have restitution orders awarded against them, see Hicks, 2009 WL 4110260, at *6, the undersigned concludes that $3,500 is a reasonable award against Mr. Brannon for the harm he proximately caused to Vicky. The Court further agrees with other courts that it "is confident that the amount of harm [defendant] actually inflicted on Vicky exceeds the amount [of restitution] awarded, and thus [defendant] has little to protest in the way of due process or otherwise." Id.

## III.    CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that the Government's request for restitution on behalf of Victim Vicky be **GRANTED**, and that defendant, Chadwick Keith Brannon, be **ORDERED** to pay restitution to Victim Vicky in the amount of $3,500.

23

**SO RECOMMENDED**, this 26th day of May, 2011.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

v.

CHADWICK KEITH BRANNON,

Defendant.

CRIMINAL ACTION FILE
NO. 4:09-CR-38-RLV-WEJ

## ORDER FOR SERVICE OF
## NON-FINAL REPORT AND RECOMMENDATION

Let this Non-Final Report and Recommendation of the United States
Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and the
Court's Local Criminal Rule 58.1(A)(3)(a), be filed and a copy, together with a copy
of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if
any, to the Non-Final Report and Recommendation within fourteen days of the
receipt of this Order. Should objections be filed, they shall specify with particularity
the alleged error(s) made (including reference by page number to any transcripts if
applicable) and shall be served upon the opposing party. The party filing objections

will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the District Court. Failure to object to this Non-Final Report and

Recommendation waives a party's right to review. Fed. R. Crim. P. 58(b)(2).

The Clerk is directed to submit the Non-Final Report and Recommendation

with objections, if any, to the District Court after expiration of the above time

period.

**SO ORDERED**, this 26th day of May, 2011.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2